**Jeffrey A. HALL, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 56A04–0807–CR–386.**

Court of Appeals of Indiana.

Dec. 12, 2008.

Jeffrey D. Drinski, Blaney & Walton, Morocco, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Jeffrey A. Hall ("Hall") appeals his conviction for Dealing a Schedule III Controlled Substance, a Class B felony.[1] We affirm.

### Issues

Hall presents two issues for review:

I. Whether a sound recording was admitted without an adequate foundation; and

II. Whether the trial court's decision to provide the sound recording and equipment to the jurors during deliberations unduly empha-

---

1. Ind.Code § 35–48–4–2.

sized that evidentiary exhibit and prejudiced Hall.

## Facts and Procedural History

On June 9, 2007, Hall delivered thirty hydrocodone tablets (with a brand name of Vicodin) to a Confidential Informant ("the C.I."). He was charged with Dealing a Schedule III Controlled Substance, convicted by a jury as charged, and sentenced to ten years imprisonment. He now appeals.

## Discussion and Decision

### I. Admission of Audio Recording

Law enforcement officers outfitted the C.I. with a personal recording device and obtained an audio recording of conversation between the C.I. and Hall on the date of the transaction. The recording was played in open court over Hall's objection. Hall now complains that the recording should not have been admitted into evidence because it did not satisfy the requirements of *Lamar v. State*, 258 Ind. 504, 512–13, 282 N.E.2d 795, 800 (Ind. 1972), wherein our Supreme Court held that the admission of a sound recording should be preceded by a foundation disclosing the following:

(1) That it is authentic and correct;

(2) That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence; and

(5) That it is of such clarity as to be intelligible and enlightening to the jury.

Specifically, Hall contends that the recording lacked sufficient foundational testimony as to its authenticity and that it was of such poor clarity that it was not enlightening to the jury.

A trial court has wide discretion in deciding whether or not to admit a sound recording into evidence. *Dearman v. State*, 743 N.E.2d 757, 759 (Ind.2001). We will not reverse the trial court's decision unless it represents a manifest abuse of discretion that denied the defendant a fair trial. *Carpenter v. State*, 786 N.E.2d 696, 702–03 (Ind.2003). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* at 703.

Here, prior to the admission of the recording at issue, Bi–State Drug Task Force Agent Timothy Lindsay testified that he personally created the sound recording on compact disc by transferring or "downloading" data from the listening device with which the C.I. had been outfitted. (Tr. 82.) The C.I. testified that he had listened to the recording and that it reflected "exactly what occurred" when he "made the buy." (Tr. 66.) He denied that it had been altered or modified in any manner. There is adequate foundational testimony as to authenticity and accuracy to support the trial court's determination on admissibility.

Hall also complains about the sound quality of the recording. Perfect quality is not required; rather, we require only that, taken as a whole, the recording must be of such clarity that it does not lead the jury to speculate about its contents. *Brown v. State*, 577 N.E.2d 221, 230 (Ind.1991). We have reviewed the challenged recording in its entirety. Although it is not of perfect quality, it is of sufficient quality that the jury was not likely to have speculated about its contents. We find no abuse of the trial court's discretion in this regard.

## II. Sound Recording in Jury Room

■ Hall argues that the trial court committed reversible error when it sent the sound recording and equipment into the jury room after deliberations had begun. Citing *Powell v. State,* 644 N.E.2d 855 (Ind.1994) and Indiana Code Section 34–36–1–6, Hall contends that the trial court's decision invited the jury to "unduly emphasize" the particular evidence. Appellant's Brief at 5.

■ The procedure for allowing jurors to review evidence and testimony during deliberations is governed by both statute and case law. *Robinson v. State,* 699 N.E.2d 1146, 1149 (Ind.1998). In *Powell,* the jury went into deliberations and was deadlocked before requesting a tape recorder and three audiotapes of alleged drug transactions. 644 N.E.2d at 857. The items were provided over Powell's objection. He was convicted and appealed. Our Supreme Court initially observed that deliberations had begun, triggering the provisions of Indiana Code Section 34–1–21–6, which has been recodified at Section 34–36–1–6 and now provides:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

The statute "creates in a defendant a substantial right to be present when the jury interrupts its deliberations to review evidence not commended to it by the trial court at the beginning of its deliberations." *Powell,* 644 N.E.2d at 858. In reversing Powell's conviction, our Supreme Court noted that it would be perfectly proper for a trial court to replay audiotapes of evidence admitted, but provision of the items after deliberation had begun, without monitoring of the use, was erroneous so as to affect Powell's substantial rights pursuant to Indiana Trial Rule 61.[2] *Id.* at 858.

Subsequently, our Supreme Court clarified that Indiana Code Section 34–36–1–6 is triggered only where (1) the jurors "explicitly indicate a disagreement" as to any part of the testimony or (2) the jurors desire to be informed as to any point of law. *Bouye v. State,* 699 N.E.2d 620, 627–28 (Ind.1998). *See also Gibson v. State,* 702 N.E.2d 707 (Ind.1998) (statute inapplicable where jury requested to view evidence and did not show disagreement); *Robinson,* 699 N.E.2d at 1146 (statute inapplicable where jury note did not suggest disagreement). Here, the jury indicated neither an explicit disagreement nor a request for legal instruction. Rather, the jury merely requested to review a portion of the sound recording and "the common law protection applies whenever jurors request any type of additional guidance from the court[.]" *Bouye,* 699 N.E.2d at 628.

■ In circumstances such as these, where the statute is inapplicable, the trial court should consider three factors in deciding whether to permit the jury to take a copy of the exhibits into the jury room: (1) whether the material will aid the jury in a proper consideration of the case; (2)

---

2. Trial Rule 61 provides in relevant part: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice."

whether any party will be unduly prejudiced by submission of the material; and (3) whether the material may be subjected to improper use by the jury. *Thacker v. State,* 709 N.E.2d 3, 6 (Ind.1999). The same factors govern a trial court's decision to send exhibits to the jury before or during deliberations. *Id.*

As to the first factor, if the jury requests particular pieces of information, presumptively that information will aid the jury in proper consideration of the case. *See id.* at 7. Hall did not present any argument to the trial court tending to rebut the presumption; as such, the first factor is satisfied. Next, there is no evidence of "undue prejudice" in the submission of the sound recording. At the outset of deliberations, the jury had been provided with all of the other admitted exhibits, and once the jury was given the sound recording, they had each of the evidentiary exhibits. Thus, a particular exhibit was not provided in isolation. *See id.*

The final consideration is whether the exhibit could be subjected to improper use by the jury. Hall argues that because the jury was provided with its own sound equipment, to use outside the supervised setting of the courtroom, they could have listened to the sound recording repeatedly. Because the trial court gave the sound recording and equipment to the jury to take into the jury room, and failed to monitor its use, the potential for repetition existed. Nevertheless, repetition, without more, is not reversible error any more than is the repeated review of the other exhibits previously permitted in the jury room. *See Stokes v. State,* 801 N.E.2d 1263, 1270 (Ind.Ct.App.2004) (finding error, albeit harmless error, in the unsupervised provision of a videotape and equipment to the jury in the deliberation room), *trans. denied.*

■ Assuming that the jury in this case listened to the sound recording repeatedly in an unsupervised setting, Hall does not identify what prejudice to his substantial rights might have ensued. Hall testified and admitted that he provided the C.I. with hydrocodone:

Prosecutor: So, Mr. Hall, you're not denying or disputing the fact that you actually delivered thirty pills to [C.I.] that day, am I correct?

Hall: Correct.

Prosecutor: Okay. You don't deny that you had conversations with [C.I.] in the Newton County Jail about delivering pills, correct?

Hall: No.

Prosecutor: You don't deny the fact that you discussed different sources of drugs at the jail with [C.I.]?

Hall: No.

\* \* \*

Prosecutor: You don't deny the fact that when you gave those pills to [C.I.] that you told him to take the name off your bottle?

Hall: I took the name off.

Prosecutor: Okay. And you don't deny the fact that [C.I.] when you gave him those pills said, "I'm going to snort those m———f———s."

Hall: Yeah, I remember that.

Prosecutor: You don't dispute the fact then that you told him that you don't care what the f—— you do with those.

Hall: Yes.

Prosecutor: Okay. I have nothing further.

Defense Attorney: Why did you give those pills to [C.I.]?

Hall: The day before he came over, he told me he was in serious pain.

(Tr. 118–19.) As such, Hall did not deny the State's allegation that he delivered hydrocodone. He denied only that he accepted money, contending that he gave the pills to the C.I. out of compassion. The sound recording does not address this point of contention. Moreover, an exchange of money is not required to establish the offense of Dealing in a Schedule III Controlled Substance. *See* Ind.Code § 35–48–4–2(a) (providing that a person who knowingly or intentionally manufactures, finances the manufacture of, delivers, or finances the delivery of, a controlled substance classified in Schedule III commits dealing in that substance).

In these circumstances, the provision of the sound recording and equipment without supervision, albeit technically erroneous, did not prejudice Hall's substantial rights. Accordingly, any error is harmless.

Affirmed.

MATHIAS, J., and BARNES, J., concur.