# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2019, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Stephone Currie,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 25, 2019

Court of Appeals Case No.
18A-CR-2728

Appeal from the Lake Superior
Court

The Honorable Salvador Vasquez,
Judge

Trial Court Cause No.
45G01-1709-MR-7

**Robb, Judge.**

# Case Summary and Issues

[1] Robert Currie pleaded guilty to voluntary manslaughter, a Level 2 felony, and one count of attempted obstruction of justice, a Level 6 felony, and was sentenced to serve twenty-four years in the Indiana Department of Correction. Currie appeals his sentence, raising several issues for our review that we restate as: 1) whether the trial court abused its discretion in sentencing him, and 2) whether his sentence is inappropriate in light of his character and his offenses. Concluding the trial court did not abuse its sentencing discretion and the twenty-four-year sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] The stipulated factual basis underlying the guilty plea in this case reveals the following: Currie is affiliated with the Villeblock faction of the Vice Lord gang and Ashanti Walden was affiliated with the YMH faction in Northwest Indiana. The two had issues due to their rival gang affiliations and Walden had once robbed Currie at gunpoint and wounded him. On June 23, 2017, Currie saw Walden and Jamell Patrick having a conversation on an East Chicago sidewalk during what is described as a "block party[.]" Transcript, Volume 2 at 41. When Currie saw Walden, "the prior altercation, gang animosity, anger and rage overcame [Currie] causing him sudden heat[.]" Appendix of the Appellant, Volume Two at 112. Currie approached the two from behind and shot both Walden and Patrick. Patrick was shot in the foot and survived his injuries. Walden was shot once on the left side of his hip and once on the right

side of his chest and died as a result of his injuries.  Miguel Carter, among others, was an eyewitness to the shooting.

[3]     The State charged Currie with murder, a felony, and battery by means of a deadly weapon, a Level 5 felony.  A warrant was issued for Currie's arrest and he was ordered to be held without bail.  After Currie was arrested, he filed a petition to set bail.  While that petition was pending, Currie was in contact with other members of the Villeblock gang and encouraged attempts to intimidate and prevent witnesses from testifying at the bail hearing.  Specifically, Carter was a target of threats and someone shot at his vehicle; "afraid for his life and his family's life[,]" Carter did not appear to testify at the bail hearing despite having been subpoenaed.  *Id.* at 114.  Because of these threats, the State amended the charging information to add three counts of attempted obstruction of justice, all Level 6 felonies.

[4]     Less than one week before Currie's jury trial was scheduled to begin, Currie agreed to plead guilty to voluntary manslaughter, a Level 2 felony and a lesser included offense of murder, and one count of attempted obstruction of justice.  In exchange, the State would dismiss the remaining counts.  The plea agreement stated that the parties were "free to fully argue their respective positions as to the sentence to be imposed by the Court[,]" but that Currie's sentences for the two counts would be served concurrently.  *Id.* at 109.

[5]     At the sentencing hearing, several witnesses testified for each side, and letters were admitted into evidence both from the victim's family describing their loss

and from Currie's family and friends attesting to his good character.  The trial court accepted the plea agreement and made the following observations relevant to sentencing:

> Sentencing Considerations:
>
> 1.  The Court considers the nature and circumstance of the crimes committed and the character of the defendant, including:  The defendant and the victim were associated with rival gangs.  During the pendency of the . . . bail proceedings, the defendant committed [attempted obstruction of justice].
> 2.  The mandatory nature of the plea agreement as to the concurrent sentences.
> 3.  The reasons stated on the record, including:
> Mitigating Circumstances: . . .
> 1.  The defendant has minimal history of criminal activity.
> 2.  The defendant has pled guilty and admitted responsibility.
> Aggravating Circumstances: . . .
> 1.  The defendant has a history of criminal convictions as follows:  As an adult, the defendant was convicted of possession of marijuana . . . on July 12, 2016.
> 2.  The character of the defendant is dishonest and manipulative.
> 3.  As outlined in the factual basis for the plea agreement, the defendant attempted to intimidate a witness for the State in an effort to undermine the State's case against him.
> 4.  Another individual was shot . . . during the shooting incident.  The shooting is attributed to the defendant.

*Id.* at 142-43.  In addition to these written findings, the trial court's oral sentencing statement acknowledged Currie's strong family support and that, "[n]o question . . . you have people that think well of you. . . .  People think you are capable of doing a lot of good things in life, but yet at 24 years of age, you

find yourself guilty of murder. . . . That sudden heat factor is what otherwise reduces murder to voluntary manslaughter . . . and I can accept that." Tr., Vol. 2 at 76.

[6] The court imposed a sentence of twenty-four years for voluntary manslaughter and two years for attempted obstruction of justice, to be served concurrently.[1] The court noted that "this is a fair and proper sentence given the factors as listed. It's not the maximum sentence because I do not believe the maximum sentence is appropriate given the lack of criminal history specifically and defendant pleading guilty accepting responsibility to some extent." *Id*. at 82. Currie now appeals his sentence.

# Discussion and Decision

## I. Abuse of Discretion

[7] Currie first contends the trial court abused its discretion in sentencing him by failing to consider significant mitigating evidence of his good character and by using an element of the offense to aggravate the sentence.

---

[1] Originally, the trial court stated the sentences were to be served consecutively, but when reminded that the terms of the plea agreement stated the sentences would be served concurrently, the trial court maintained the sentences of twenty-four and two years but ordered them to be served concurrently for a total of twenty-four years.

# A. Standard of Review

[8]     Sentencing decisions rest within the trial court's discretion and are afforded considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Accordingly, we review sentencing decisions for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). A trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[9]     There are several ways in which a trial court can abuse its discretion in sentencing:

> (1) failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law.

*Phelps v. State*, 24 N.E.3d 525, 527 (Ind. Ct. App. 2015). Currie contends the trial court erred by omitting a mitigating circumstance clearly supported by the record and by finding an improper aggravating circumstance.

# B. Mitigating Circumstances

[10]    The finding of a mitigating circumstance is discretionary, and the trial court is neither obligated to accept the defendant's argument as to what constitutes a

mitigating circumstance nor required to give the same weight to mitigating evidence that the defendant would. *Hunter v. State*, 72 N.E.3d 928, 935 (Ind. Ct. App. 2017), *trans. denied*. Furthermore, if the trial court declines to find the existence of a mitigating circumstance, it is not obligated to explain why it has found that the circumstance does not exist. *Anglemyer*, 868 N.E.2d at 493. When presenting the question of whether a trial court failed to identify mitigating circumstances on appeal, an appellant must "establish that the mitigating evidence is both significant and clearly supported by the record." *Hunter*, 72 N.E.3d at 935.

[11] Currie claims the trial court abused its discretion in failing to identify his "good character" as a mitigating circumstance. Appellant's Brief at 11. Currie notes he submitted sixteen letters of support attesting to the "type of individual he is." *Id.* Currie believes this evidence of his past good deeds is indicative of his attitude and that he is unlikely to commit another crime, and he asserts that the trial court "ignored" this good character evidence. *Id.* at 12.

[12] We cannot agree with Currie that the trial court failed to consider the letters submitted on Currie's behalf. At the outset of the sentencing hearing, the court noted that both sides had submitted letters that morning and that it had reviewed them all. *See* Tr., Vol. 2 at 13. In making its sentencing statement at the conclusion of the hearing, the trial court noted that people think well of Currie and believe he has potential. *See id.* at 76. Therefore, the record demonstrates that the trial court did consider the positive statements made on Currie's behalf when determining his sentence.

As for the content of the letters and the live testimony offered on Currie's behalf, the trial court is not obligated to give the evidence the same weight that Currie would. *See Hunter*, 72 N.E.3d at 935. Furthermore, the trial court was not required to state why it did not consider this evidence to be mitigating. *See Anglemyer*, 868 N.E.2d at 493.[2] Nonetheless, it seems obvious from the trial court's recognition of Currie's gang affiliation and the impact gangs have on the community, a situation the court described as "[j]ust plain horrible[,]" tr., vol. 2 at 77, that the trial court assessed Currie's character by giving more weight to Currie's gang affiliation and intimidation tactics than to evidence of his prior good deeds. That the trial court did not find Currie's mitigating evidence to be significant in light of the overall picture of Currie's character was not an abuse of the trial court's sentencing discretion.

## C. Aggravating Circumstances

Currie also claims it was improper for the trial court to identify his prior misdemeanor conviction of possession of marijuana, his dishonest and manipulative character, and his attempts to intimidate a witness as aggravating circumstances.

---

[2] Currie contends in his reply brief that "[i]f the Court did not find [his good character evidence] to be mitigating, then it was obligated to say so. The Court's silence indicates that it was not considered, not that it considered it and failed to assign it any weight." Appellant's Reply Brief at 6. This is not, in fact, the law. *See supra*, ¶ 10. A trial court is only obligated to include in its sentencing statement those mitigating circumstances that it finds to be significant. *Battles v. State*, 688 N.E.2d 1230, 1236 (Ind. 1997).

[15] The trial court's written sentencing order both identifies Currie's "minimal history of criminal activity" as a mitigating circumstance and his "history of criminal convictions" as an aggravating circumstance. App. of the Appellant, Vol. Two at 143. As Currie points out, "It cannot be both." Appellant's Br. at 13. During the trial court's oral statement at the hearing, however, the trial court stated Currie had "no significant criminal record" and clearly indicated that it did not find Currie's single misdemeanor conviction to be aggravating because it was "so unrelated to why we're here that it's hard to – and I won't do it either – put much stock in [it.]" Tr., Vol. 2 at 75. Where the written and oral sentencing statements conflict, we examine the two together "to assess the conclusions of the trial court." *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). Given the trial court's oral statement and the inclusion of Currie's "minimal history of criminal activity" as a mitigating circumstance in the written sentencing order, we conclude the trial court's intention was that Currie's criminal history be considered a mitigating circumstance and included it as an aggravating circumstance in the written order in error.

[16] Currie addresses the next two aggravators—his dishonest and manipulative character and his attempts to intimidate a witness—under the single argument that the trial court improperly used an element of the offense to aggravate his sentence. *See* Appellant's Br. at 13-14 ("In essence, the second and third aggravators are mirror images and both improper."). The trial court stated at the sentencing hearing:

> Your intent to intimidate a witness not to show up for a bail hearing [is] dishonest [and] manipulative . . . . [T]his instance in which you were involved in which you had a specific hand in trying to intimidate a witness is a significant event given the totality of the circumstances here. . . . It's so significant that I think . . . it's an aggravating factor for the charge of voluntary manslaughter.

Tr., Vol. 2 at 81. A material element of a crime may not be used as an aggravating circumstance supporting an enhanced sentence for that crime. *Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016), *trans. denied*. This is because the legislature has determined the appropriate advisory sentence based on the elements of the crime committed. *Gomillia v. State*, 13 N.E.3d 846, 852 (Ind. 2014). A court may, however, consider the nature and circumstances of the crime as an aggravating circumstance. *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001). This is generally thought to be "associated with particularly heinous facts or situations" and the trial court must detail the particularized circumstances beyond the elements of the crime itself that warrant an enhanced sentence. *McElroy*, 865 N.E.2d at 589-90 (holding that where the trial court examined the unique circumstances of the defendant's reckless behavior in repeatedly igniting a lighter in the cargo area of a paint truck transporting thirteen painters and flammable materials, setting a fire that killed two painters and seriously burned the others, the trial court did not err in identifying the nature and circumstances of the offense as aggravating).

[17] Here, intimidating a witness is not a material element of voluntary manslaughter. Rather, presenting a slightly different scenario than is typical,

the trial court used the elements of attempted obstruction of justice—a crime for which Currie was also convicted and sentenced in this proceeding—as an aggravating circumstance to support an enhanced sentence for voluntary manslaughter. The trial court spoke at some length about the general difficulty of securing convictions because of interference with witnesses:

> Your intent to intimidate a witness not to show up for a bail hearing. That's dishonest, that's manipulative and that's an aggravating factor. I know for a fact that these things happen, and I know that we'll have some cases from time to time, next thing you know, maybe a year goes by, six months, nine months, state files a motion to dismiss the case. Well, what happened? Our witnesses died. Our witnesses left the area. We have no witnesses that will speak. We can't get in contact with witnesses that once decided to cooperate. And they just check out. And now what was once a viable murder charge is now a dismissal. We see this all the time. . . . In this case, you were caught.

Tr., Vol. 2 at 81. The trial court referenced in both its oral and written sentencing statements the stipulated factual basis which detailed in fourteen paragraphs multiple attempts to intimidate witness Carter to keep him from testifying at Currie's bail hearing. *See* Tr., Vol. 2 at 80-81; App. of the Appellant, Vol. Two at 143 ("As outlined in the factual basis for the plea agreement, the defendant attempted to intimidate a witness for the State . . . ."). In that stipulation, Currie admitted to at least three separate instances of contacting a fellow gang member to encourage him to intimidate Carter. Currie admitted to the fact that someone associated with him approached Carter and told him not to appear in court and acknowledged that gun shots were directed

at Carter's vehicle. And the stipulated factual basis indicated that Carter was afraid for his and his family's lives as a result of these threats. Currie pleaded guilty to one count of attempted obstruction of justice, when the facts and circumstances of the case demonstrate multiple instances of attempted obstruction and threatening behavior directed toward Carter over the course of several weeks. "[T]he particular facts – the ongoing nature and length of [the] criminal conduct – can properly be considered as aggravation." *Phipps v. State*, 90 N.E.3d 1190, 1198 (Ind. 2018). Because the trial court detailed the reasons why the intimidation of this witness went beyond the mere statutory requirements of the one count of attempted obstruction to which Currie pleaded guilty, we conclude the trial court did not abuse its discretion in identifying the intimidation of a witness as an aggravating circumstance, either on its own or as a reflection of Currie's character.

[18] Although the trial court erred in including Currie's history of criminal convictions as an aggravating circumstance in its written sentencing statement when it is clear the trial court intended Currie's minimal criminal history to be a mitigating circumstance, the remaining aggravating circumstances were proper.[3] When a trial court considers an improper aggravating circumstance, we may nevertheless affirm the sentence if we can say with confidence that the trial court would have imposed the same sentence absent the improper finding.

---

[3] Notably, Currie does not challenge the trial court's finding that it was an aggravating circumstance that another individual was shot during this incident.

*Webb v. State*, 941 N.E.2d 1082, 1090 (Ind. Ct. App. 2011), *trans. denied*.

Despite one listed aggravator being improper, it does not appear from the record that the trial court actually considered that to be an aggravating circumstance in crafting Currie's sentence, and regardless, the trial court properly considered three other aggravating circumstances. As such, we are confident the trial court would have imposed the same sentence.

## II. Inappropriate Sentence

### A. Standard of Review

[19] Currie requests that we revise his sentence, claiming the twenty-four-year sentence he received is inappropriate given the nature of his offenses and his character. He requests that we revise his sentence to the advisory sentence for a Level 2 felony. "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[20] The defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer*, 868 N.E.2d at 494. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. The sentence imposed by the trial court should be upheld unless we find compelling evidence "portraying in a positive light the nature of

the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

## B. Currie's Sentence

[21] The nature of the offense references a defendant's actions in comparison with the elements of the offense. *Cannon v. State*, 99 N.E.3d 274, 280 (Ind. Ct. App. 2018), *trans. denied*. The nature of the offense can be analyzed by using the advisory sentence as a starting point. *Anglemyer*, 868 N.E.2d at 494. The sentencing range for voluntary manslaughter, a Level 2 felony, is ten to thirty years, with an advisory sentence of seventeen and one-half years.[4] Ind. Code § 35-50-2-4.5.

[22] The record is necessarily limited due to Currie's guilty plea, but we do have the benefit of an extensive stipulated factual basis for the plea and the trial court's statement from the sentencing hearing. Currie pleaded guilty to voluntary manslaughter and attempted obstruction of justice. We note that Currie was originally charged with murder for the death of Walden, battery by means of a deadly weapon for injuring Patrick, and four counts of attempted obstruction of justice for the various ways in which he attempted to keep Carter from

---

[4] Because the sentence for attempted obstruction of justice is concurrent to the sentence for voluntary manslaughter, we focus on the voluntary manslaughter sentence as the longer of the two.

testifying at his bail hearing. Currie received a substantial benefit from the plea agreement, which he did not enter until approximately a week before his case was set for jury trial, and although the stipulated factual basis acknowledges that Currie caused injury to Patrick, the crimes for which he was convicted and sentenced do not reflect that injury. Generally, the presence of multiple victims justifies the imposition of enhanced and/or consecutive sentences. *Sanchez v. State*, 938 N.E.2d 720, 723 (Ind. 2010). Additionally, there were other bystanders that night – an investigating officer described the scene of the crime as "there was [sic] a lot of people out there. There was some type of block party going on. There was a lot of smoking, a lot of drinking, just a lot of congregating[.]" Tr., Vol. 2 at 41. Under those circumstances, the possibility of injury to many more people when Currie fired a gun multiple times was high.

[23] The character of the offender refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Cannon*, 99 N.E.3d at 280. In conducting our review, we consider the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Walters v. State*, 68 N.E.3d 1097, 1101 (Ind. Ct. App. 2017), *trans. denied*.

[24] Currie highlights that he is only twenty-four years old, that he has graduated high school and attended some college classes, that he was employed full-time when he was arrested, that he is not a drug user, and that "there was an enormous community outpouring describing Currie's good character." Appellant's Br. at 16. We acknowledge and commend Currie for all these admirable attributes. Yet, he was affiliated with a gang, he carried a firearm,

and he shot and killed a member of a rival gang with whom he had ongoing animosity. The trial court accepted his assertion that he acted in sudden heat upon seeing Walden and remembering Walden's previous crimes against him. But the fact remains that he killed another man who had no opportunity to defend himself and injured a bystander in the process. Even after being arrested for this crime, Currie committed the additional crime of attempting to obstruct justice by engaging in a weeks-long campaign to intimidate an eyewitness to the shooting. On the whole, we cannot say that Currie's character is so stellar as to warrant a revision of his sentence.

In sum, Currie has not met his burden of convincing us that his sentence is inappropriate.

# Conclusion

The trial court did not abuse its discretion in sentencing Currie and the twenty-four year sentence the trial court imposed is not inappropriate in light of the nature of Currie's offenses and his character. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Baker, J., and Najam, J., concur.